IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| H.S. FIELD SERVICES, INC. | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. 12-CV-531-JED-PJC |
| | ) |
| CEP MID-CONTINENT, LLC, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on the Renewed Motion to Compel and for Sanctions ("Motion to Compel") of Defendant CEP Mid-Continent LLC ("CEP"). [Dkt. No. 53]. CEP complains that H.S. Field Services, Inc. ("HS") has failed to provide documents necessary for CEP to defend HS's claims against it and to prosecute CEP's counterclaim. CEP asks the Court to direct HS to produce the following:

- Daily Roustabout Worksheets;
- Daily employee timesheets, logs or work tickets;
- All Third-Party Invoices for charges billed by HS to CEP for invoices that are the subject of CP's audit or HS's claims;
- Audited financial records and tax returns and related schedules;
- HS's electronic QuickBooks.

At the heart of this discovery dispute is a disagreement between the Parties over which of the above documents exist as well as the usual relevancy issues. The Court conducted a hearing on March 11, 2014, and CEP placed additional evidence in the record.

1

# I
# BACKGROUND

CEP operates oil and gas leases in Osage County, Oklahoma, among other places. Pursuant to a Master Service Agreement ("MSA"), HS provides various work and services for CEP's oil and gas leases. This lawsuit arises out of the on-going business relationship between HS and CEP from May 2003 to February 2012. HS alleges that beginning in 2011, CEP failed to pay for services rendered totaling $504,994.85.[1] CEP has initiated an audit, pursuant to the terms of the MSA, and has counterclaimed, alleging that HS breached its contracts with CEP through improper charges and overcharges in excess of $1.5 million. [Dkt. No. 43].

The MSA was executed on March 25, 2009, and establishes basic terms of the Parties' agreement. Under the agreement, HS was to perform certain Work for CEP. The Work included "all services" performed by HS for CEP and HS's "provision to [CEP] of products, equipment, supplies, or materials utilized in connection with such services." MSA, ¶1. Under the MSA, HS is to maintain "a true and correct set of records pertaining to the Work," and each subcontractor is to retain "all records which are subject to inspection hereunder for the applicable statute of limitations period." *Id.* at ¶6. Furthermore, CEP may audit any and all records of HS and of any subcontractor relating to HS's Work:

---

[1] HS's First Amended Complaint asserts claims for open account, quantum meruit and breach of contract. [Dkt. No. 13].

> Company [CEP] shall have to the right to audit Contractor's {HS's} books and records relating to all invoices issued pursuant to this Contract. Contractor agrees to maintain such books and records for a period of two (2) years from the date such costs were incurred and to make such books and records available to Company at any time or times within such two-year period.

*Id.* at ¶12.

In mid-2011, problems arose between the parties and CEP did not pay certain invoices. In November 2011, CP asserted its right under the MSA to audit HS's books regarding invoices. In July 2012, HS filed suit in Washington County District Court; thereafter, CEP removed the case to this Court.[2] CEP filed its counterclaim in October 2012.

In furtherance of the audit, CEP requested a broad range of documentation from HS. Disputes quickly arose over what information HS maintained and what documents would be made available to CEP. After CEP served discovery requests, further disputes arose including the breadth of document requests, and the relevance of information sought. In May 2013, CEP filed a Motion to Compel. [Dkt. No. 31]. After initial review of the motion and response, the Court ordered the Parties to meet and confer over the scope of information requested, and attempt to narrow their dispute. [Dkt. No. 44]. The Parties seemed to have successfully resolved most of their disputes; therefore, the Court

---

[2]   The MSA provides that "[I]n the event that litigation arises in connection with this Contract or any Work, any action must be brought in Harris County, Texas." [Dkt. No. 31-2, MSA, ¶ 13]. At the hearing held on March 11, 2014, both Parties advised the Court that their clients were waiving their rights under this forum selection clause.

denied the Motion to Compel Without Prejudice. [Dkt. No. 46]. The Parties were directed to "advise the Court well before the scheduled discovery cutoff" if any matters were not fully resolved. [*Id.*].

On January 16, 2014, CEP filed the pending Renewed Motion to Compel and for Sanctions. The Parties continue to disagree over what information is relevant for purposes of Rule 26, and also what must be produced and has been produced for purposes of the MSA audit. The Parties also contest what documentation even exists – CEP claims that HS has lost or destroyed necessary documents. HS denies this assertion.

## II
## APPLICABLE LEGAL PRINCIPLES

It is generally understood that discovery under the Federal Rules is limited by relevance and burdensomeness. *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975); *Littlebear v. Advanced Bionics, LLC*, 2012 WL 2979023, *1 (N.D. Okla. July 20, 2012). Following the 2000 amendment of Fed. R. Civ. P. 26, the Tenth Circuit Court of Appeals noted:

> This change implemented a two-tiered discovery process; the first tier being attorney-managed discovery of information relevant to any claim or defense of a party, and the second being court-managed discovery that can include information relevant to the subject matter of the action. *See, e.g.,* 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.41[1] (3d ed.2007) [hereinafter *Moore's* ]; 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2008 (2d ed.2008) [hereinafter *Federal Practice*]; Thomas D. Rowe, Jr., *A Square Peg in a Round Hole? The 2000 Limitation on the Scope of Federal Civil Discovery,* 69 Tenn. L.Rev. 13, 17 (2001). Accordingly, when a party objects that

> discovery goes beyond that relevant to the claims or defenses, "the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action." Fed.R.Civ.P. 26 advisory committee's note (2000). This good-cause standard is intended to be flexible. *Id.* When the district court does intervene in discovery, it has discretion in determining what the scope of discovery should be.

*In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 -1189 (10th Cir. 2009).

While Rule 26 still contemplates liberal discovery and broad concept of relevance, the Rule also recognizes that discovery must be proportionate to the case and issues at hand. Fed. R. Civ. P. 26(b)(2). Trial courts have broad discretion in managing discovery matters and are subject to review only for abuse of discretion. *Smith v. Sentinel Inc. Co., Ltd.*, 2011 WL 2883433, *1 (N.D. Okla. July 15, 2011).

Rule 26(b)(1) provides that parties may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). At the discovery phase of litigation "relevancy" is broadly construed.

In this case, document production is also guided by the contractual provisions of the MSA. CEP's right to audit HS's records and HS's obligation to retain certain documentation is set forth in Paragraphs 6 & 12. Under the MSA, HS is required to retain certain books and records related to the Work

5

performed for CEP for two years from the time the Work was performed. CEP has the right to review these books and records within that two-year period.

### III
### DISCUSSION

The first issue the Court will address is the temporal scope of CEP's discovery. HS filed its breach of contract claim on July 23, 2012. [Ex. "A" to Dkt. No. 2]. The contract between CEP and HS is governed by Texas law. MSA, ¶ 13. Texas law provides for a four-year statute of limitations on written contracts. V.T.C.A., Civil Prac. & Rem Code § 16.051; *Lopez ex rel. Gutierrez v. Premium Auto Acceptance Corp.*, 389 F.3d 504 (5th Cir. 2004) (In Texas, the residual four-year statute of limitations generally governs contract actions.). Thus, the relevant period for Rule 26 discovery as to the contract claims of HS and CEP begins July 23, 2008 and extends to February 2012 (the "discovery time period").

CEP also has a two-year window within which to audit HS's books and records related to the Work performed under the MSA. CEP asserted its right to audit on November 30, 2011. Therefore, HS must make available its books and records for auditing from November 30, 2009, to February 2012 (the "audit time period").

The evidence submitted to the Court indicates that HS has not produced documents that it should have retained in connection with the invoices it submitted for payment. The affidavit of Roxanne Haynes-Urbina ("Haynes") and her August 15, 2012, Audit Report establish some of the

problems with HS's supporting documentation for invoices it submitted for payment. The signed statement of Robert Benfer, former HS Crew Foreman, indicates that daily logbooks were kept at least by some HS employees and that Roustabout Worksheets were required by HS management in order to prepare invoices. Nevertheless, CEP has now been told that while Roustabout Worksheets were used prior to 2008/09 and again after this lawsuit was filed, few, if any, exist for 2008-12, the time period relevant to this litigation. This is not consistent with Haynes's recollection of what she was told by HS's office manager. Haynes stated that Jamie Laws told her that Roustabout Worksheets and time records were used to prepare invoices. Particularly troubling to the Court are statements made by Jim Shambles ("Shambles"), owner of HS, concerning HS's efforts to find relevant documents. At his deposition in January 2014, Shambles was asked about employee time records:

    Q:    So the superintendent would then take this information and fill out a schedule that reflected the daily hours worked by each employee. Is that correct?

    A:    Yes.

    Q:    What was then done with that schedule?

    A:    It would be given to the girl in the office and she would, when Paychex would phone, she would read the hours, like I said before: 40 and 30, 40 and 24, 40 and 15.

    Q:    Was that girl in the office Jamie Laws?

    A:    Yes.

Q: And then what would Jamie Laws do with the schedule?

A: Kept it in a file with that till, like I said, as far as I know, she kept it in a file till she made sure that nobody came in complaining about their paycheck.

Q: Was she given any instructions as to how long to retain those records?

A: Not by me.

**Q: Have you asked Ms. Laws whether she retained past weekly time records?**

**A: I haven't asked her, no.**

Q: How do you know that they no longer exist?

A: They would have been in the Conex, in the boxes that you guys had been through. And she did, she has been involved in all of this, too. She would have known, she said have said something if they were anywhere else.

Q: But you haven't asked her if they exist someplace else?

A: She knows you guys are going through the boxes.

**Q: My question to you is: At any time after this audit started have you asked her what happened to the weekly time records for your employees?**

**A: No. I don't recall that.**

[Dep. of Jim Shambles, vol. II, p.167, line 24 – p. 169, line 7 (emphasis added)].

Thus, even after two motions to compel have been filed, multiple meetings and communications between counsel over discovery, and visits to HS's offices to review documents, it appears that HS has not undertaken the basic inquiry into whether requested documents exist. Rule 26(g) "imposes an affirmative duty to

engage in pretrial discovery in a responsible manner that is consistent with the spirit and purpose of Rules 26 through 37." Rule 26 advisory committee's note (1980). A critical part of the discovery procedure is a "reasonable inquiry" before a party responds to discovery requests. The responding party's attorney must make a reasonable inquiry "into the factual basis of his response." *Id.* The attorney may rely on assertions by the client "as long as that reliance is reasonable under the circumstances." *Id.*

Here, the Shambles deposition indicates that HS has not inquired of its employees whether they know of documents responsive to CEP's requests and if they personally retained such documents. Shambles, for example, said he did not inquire of Laws whether she retained any of the schedules reflecting employee's hours worked. Likewise, it is unclear what investigation was made concerning Roustabout Worksheets. Clearly, more must be done in the way of "reasonable inquiry" to determine what documents responsive to CEP's requests HS has in its possession, custody or control.

CEP's Motion to Compel is **GRANTED IN PART AND DENIED IN PART**. First, the relevant audit time period for review of documents under the MSA is November 30, 2009, to February 2012. HS is hereby **ORDERED** to produce within two weeks of the date herein, its QuickBooks electronic information for the audit time period. HS is also **ORDERED** to produce any

daily Roustabout Worksheets, employee timesheets and third party vendor invoices for charges billed to CEP by HS for invoices for the audit time period.

In addition, CEP is entitled to discovery pursuant to Rule 26 as to HS's claims and CEP's counterclaim. In this regard, HS is hereby **ORDERED** to produce audited financial statements for July 2008 through 2011. Additionally, HS shall produce Roustabout Worksheet and employee time sheets for July 2008 through November 2009, if they exist. As the Court has previously Ordered, HS shall certify that it has made a reasonably thorough search for these documents and shall advise CEP if these documents have been located and for what time period. The communication is this regard is to be certified by HS's counsel and an officer of HS. If any such documents have been lost or destroyed, HS shall certify that fact and explain when, how and why any such destruction occurred. *See* Dkt. No. 72. This should be completed by **April 1, 2014**.

## CEP's MOTION FOR SANCTIONS

CEP also seeks an award of monetary and other sanctions against HS for its discovery conduct. Whether sanctions are appropriate, and, if so, in what form, is not clear from this record. It is unclear, for example, whether requested documents exist but were not adequately searched for, or whether documents were deliberately ignored, hidden or destroyed, or whether documents were accidentally lost or destroyed. Much may depend on the testimony of witnesses

who have not yet been deposed. Furthermore, properly developing the record for purposes of a sanctions hearing will divert time and effort from the real issues at hand: completing discovery and preparing for settlement or trial of this case. Four Scheduling Orders have been entered in this case [Dkt. Nos. 21, 29, 49 & 69]. The Parties have less than 60 days to complete fact discovery and only about 10 weeks to complete expert reports and discovery. Taking up the sanctions issue at this time will pose obstacles to the Parties' ability to meet the Court's trial schedule. Therefore, the Court **DENIES WITHOUT PREJUDICE** the pending Motion for Sanctions [Dkt. Nos. 61 & 53]. The Court's action is not to be interpreted as a statement concerning the substantive merits of that motion; rather, it merely recognizes that the Parties' ability to complete discovery and meet other scheduling deadlines will be impaired if they undertake satellite litigation over sanctions at this time. The motion will be addressed if it is renewed at the end of the case.

**IT IS SO ORDERED** this 18th day of March 2014.

_____
Paul J. Cleary
United States Magistrate Judge