# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| H.S. FIELD SERVICES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-CV-531-JED-PJC |
| | ) |
| CEP MID-CONTINENT, LLC, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff H.S. Field Services, Inc. ("HS") asserts that the undersigned United States Magistrate Judge is required to recuse from this case because his son is an associate with the law firm representing Defendant CEP Mid-Continent, LLC ("CEP").[1] [Dkt. No. 93]. HS asserts that recusal is mandated under 28 U.S.C. § 455(b)(5)(ii) because Conor has "acted as a lawyer in this proceeding," and that recusal is also mandated under § 455(a) because Conor's employment creates the appearance of partiality. An evidentiary hearing was held on July 1, 2014 ("the July 1 hearing"). HS was represented by Johnny P. Akers ("Akers") of Akers & Esser Law Center. CEP was represented by Kevin Hayes and Heather Cupp of Hall Estill Hardwick Gable Golden & Nelson ("Hall Estill").

---

[1] It is not disputed that Conor Patrick Cleary (hereafter, "Conor") is the son of the undersigned judge (hereafter, "Judge Cleary"). It is also not disputed that Conor is an associate at the law firm which represents CEP in this case.

1

HS's motion is **DENIED** because HS has offered insufficient factual and legal bases for its motion.

As agreed to at the July 1 hearing, any objection or appeal of this Opinion and Order to the assigned District Judge must be filed within 10 days of the date herein – or <u>by **July 21, 20**14</u>.

# I
# INTRODUCTION

HS makes two complaints: First, that when Defendant's Motion for Sanctions and for Finding of Contempt [Dkt. No. 76] was referred to the undersigned for determination, "no mention was made by opposing counsel that Magistrate Cleary's son, Conor, ha[d] been an associate with [Hall Estill], the firm representing the Defendant . . . since 2010." [Dkt. No. 93 at 2]. HS contends that CEP's counsel had an affirmative duty to disclose this fact once an application for contempt was filed because the parties must consent to a Magistrate Judge hearing the contempt matter.[2] Second, an "apparent" problem "exists regarding impartiality when the jurist selected to hear arguments on discovery, [now including citations for contempt . . . as well as sanctions against the Plaintiff] is the father of an attorney for the firm bringing the requests for such punitive measures . . . ." [*Id.*]. HS complains that counsel for CEP failed to disclose Conor's employment with Hall Estill "before the matters

---

[2] This argument was raised for the first time at the evidentiary hearing. Counsel for HS offered no legal or factual support for this argument, and the Court is aware of none.

2

involving discovery were completed." [*Id.*]. Accordingly. HS requests that the undersigned recuse from this case and that "all future matters assigned to Magistrate Cleary be assigned to another Magistrate unaffiliated with [Hall Estill]." [*Id.* at 4]. HS further requests that CEP's Motion for Contempt and Motion for Sanctions [Dkt. No. 53] be "summarily dismissed." [*Id.*].

CEP opposes the Motion for Recusal, arguing that where the son of a judge is not an equity partner in the firm and has performed no work on the matter at issue, recusal is not warranted. Furthermore, CEP contends that HS's motion is based on "nothing more than vague, unsupported fears of bias or conclusory allegations regarding the appearance of impropriety." [Dkt. No. 99, at 9]. CEP argues that the motion is nothing more than an attempt by HS to avoid the consequences of its misconduct during discovery in this matter. [*Id.*].

## II
## HISTORY OF THE LITIGATION

This lawsuit arises out of a contract for oil field services between HS and CEP and the parties' on-going business relationship between May 2003 and February 2012. CEP operates oil and gas leases in Osage County, Oklahoma, among other places. Pursuant to a Master Service Agreement ("MSA"), HS provides various work and services for CEP's oil and gas leases. HS alleges that beginning in 2011, CEP failed to pay for services rendered and now owes HS in excess of $500,000. HS has asserted claims for open account, quantum meruit and breach of contract. [Dkt. No. 13].

Pursuant to the terms of the MSA, CEP has initiated an audit of invoices and supporting documentation.[3] On July 12, 2013, CEP filed a counterclaim, alleging that HS breached its contracts with CEP through improper charges and overcharges exceeding $1.5 million. [Dkt. No.43].

In furtherance of its audit, CEP requested a broad range of documents from HS. Disputes quickly arose over what information HS maintained and what documents would be made available to CEP. Further disputes arose after CEP served discovery requests on HS. In May 2013, CEP filed a Motion to Compel. [Dkt. No. 31]. After initial review of the motion and HS's response, the Court ordered the Parties to meet and confer over the scope of information requested, and to attempt to narrow their dispute. [Dkt. No. 44]. The Parties seemed to have successfully resolved most of their issues; therefore, the Court denied CEP's Motion to Compel Without Prejudice. [Dkt. No. 46]. The Parties were directed to "advise the Court well before the scheduled discovery cutoff" if any matters were not fully resolved. [*Id.*].

On January 16, 2014, CEP filed its Renewed Motion to Compel and for Sanctions. The Parties continued to disagree over what information was relevant under Rule 26, and also what information was to be produced for purposes of CEP's audit. These disputes have never been fully resolved. The Parties disagree

---

[3] The MSA provides that CEP has the right to audit HS's books and records relating to invoices issued under the contract. Furthermore, under the MSA, HS agreed to maintain such records for two years from the date related costs were incurred, and to make those records available to CEP.

4

over what documents even exist – CEP claims that HS has lost or destroyed necessary documents. HS has denied this assertion; however, at a hearing on April 24, 2014, counsel for HS conceded that additional documents responsive to CEP's requests had recently been found – documents that HS had previously stated did not exist. Thereafter, the Court indicated it would impose sanctions against HS for the fees and costs associated with CEP's Motion to Compel documents responsive to its discovery requests. [Dkt. No. 91, at 7-8]. The Court withheld any finding of contempt and gave HS additional time to provide CEP with information regarding documents that CEP claimed were missing or destroyed. [*Id.*, at 7].

## III
## APPLICABLE LEGAL PRINCIPLES

HS seeks disqualification of the undersigned Magistrate Judge, citing two provision of 28 U.S.C. § 455. That statute provides, in pertinent part:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

    \*      \*      \*      \*

5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person . . . [i]s acting as a lawyer in the proceeding . . . .

The two sections cited by HS differ in a significant respect: Section 455(a) is a generalized "catchall" recusal provision, *Liteky v. U.S.*, 510 U.S. 540, 548 (1994),

5

addressing the *appearance* of bias, while section 455(b)(5)(ii) deals with a specific situation involving a judge's personal relationship – specifically, the situation where a close family member of the judge is "acting as a lawyer" in the case in question.

If a judge does not remove himself from a case *sua sponte* – as is the situation here – a party may file a motion for recusal. *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1263 (11th Cir. 2009) ("A party may file a Recusal Motion when a judge's impartiality may reasonably be questioned.") The party seeking recusal has the burden of "proving facts that would justify recusal." *U.S. v. Evans*, 262 F.Supp.2d 1292, 1294 (D.Utah 2003) (*citing U.S. v. Pearson*, 203 F.3d 1243, 1276-77 (10th Cir.), *cert. denied*, 530 U.S. 1268 (2000)). Judges are presumed to be impartial; accordingly, a party seeking recusal bears "the substantial burden of proving otherwise." *In re Medtronic, Inc. Sprint Fidelis Leads Product Liability Litigation*, 601 F.Supp.2d 1120, 1124 (D.Minn. 2009). As one circuit Court has noted: "A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003) (citation omitted). District courts within the Tenth Circuit have also noted the heavy burden on a party seeking recusal. *Gilbert v. DHC Development, LLC*, 2013 WL 1791840, at *3 (D.Utah April 26, 2013); *Blakely v. USAA Cas. Ins. Co.*, 2012 WL 6115625, at *5 (D.Utah Dec. 10,

2012); *MacArthur v. San Juan County*, 2005 WL 2716300, at *4 (D.Utah Oct. 21, 2005).

The fundamental test under § 455(a) is whether a reasonable person knowing all the relevant facts would harbor doubts about the judge's impartiality. *U.S. v. Stewart*, 378 Fed.Appx. 773, 777 (10th Cir. 2010) (*citing Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987)). The test is an objective one. *Harris v. Champion*, 15 F.3d 1538, 1571 (10th Cir. 1994). The appearance of bias must be reasonable in light of all the facts, not just those facts selected by the movant. *Hinman*, 831 F.2d at 939. The hypothetical reasonable person "is not a person unduly suspicious or concerned about a trivial risk that a judge may be biased." *U.S. v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998).

> [W]hen considering disqualification, the district court is *not* to use the standard of "Caesar's wife," the standard of mere suspicion. That is because the disqualification decision must reflect *not only* the need to secure public confidence through proceedings that appear impartial, *but also* the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking.

*In re Allied-Signal, Inc.*, 891 F.2d 967, 970 (1st Cir. 1989) (citation omitted).

To justify recusal under § 455(b)(5)(ii), the movant must offer **proof** that a close relative of the judge is acting as a lawyer in the case. "'[U]nsupported, irrational, or highly tenuous speculation' will not do." *Hinman*, 831 F.2d at 939.

Although a judge has a duty to recuse when his impartiality might *reasonably* be questioned, he or she also has "as strong a duty to sit when there

is no legitimate reason to recuse." *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1204 (10th Cir. 2006) (*quoting Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 659-60 (10th Cir. 2002)). The recusal statute should not be construed so broadly as to become presumptive or to require recusal based on unsubstantiated suggestions of personal bias or prejudice. *Switzer v. Berry*, 198 F.3d 1255, 1258 (10th Cir. 2000). The statute "is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." *U.S. v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993). It is not intended "to be used as a judge shopping device." *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995). Thus, the moving party must provide evidence to support its recusal motion. Vague or conclusory claims of bias without supporting factual allegations do not warrant a judge's recusal. *Kampfer v. Gokey*, 955 F.Supp. 167, 170 (N.D.N.Y. 1997), *aff'd*, 175 F.3d 1008 (2d Cir. 1999).

# IV
# DISCUSSION

### A. HS's Motion to Recuse Pursuant to Section 455(b)(5)(ii)

The Court will begin its analysis of HS's motion with the more specific of the two recusal provisions. HS asserts that Conor *has* acted as a lawyer in this case. HS has the substantial burden of establishing a basis for recusal under this statute. *Evans*, 262 F.Supp.2d at 1294. Thus, at the very least, HS must prove that Conor has **_actually participated_** in this litigation. *In re Vazquez-Botet*, 464

F.3d 54, 58 (1st Cir. 2006) (emphasis added) (*quoting McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1260 (5th Cir. 1983)).

HS attached no affidavits or evidentiary material to its recusal motion, and Akers admitted at the July 1 evidentiary hearing that he had no evidence to support this allegation:

> Your Honor, on the 455(b)(5)(ii) – that particular thing, I do not like going into finding all the additional information that would totally be required to do this, so I'd like to advise the Court as to what I understand, okay?

[Transcript of July 1, 2014, hearing (hereafter, "Transcript"), p. 3, lines 1-7].

Akers' "understanding" was based solely on conjecture and speculation:

> The mere fact that [Conor] is not shown as a lawyer on the pleadings doesn't mean that he doesn't participate in the litigation. His firm represents them in litigation and he has significant interests, both in forms that are used and in knowing – if they ask, what's your dad's idiosyncrasies, what does he like, what he doesn't like, as far as doing strategy and that kind of stuff, they would be utilizing his services for what I believe is improper.

[Transcript, p. 4, lines 16-25].

Akers speculated that Conor may have developed some unidentified "form" or "other stuff" used by Hall Estill in this case:

> It's my understanding they have form banks and I assume that he's responsible for some of those forms as well as other stuff.

[Transcript, p. 7, lines 17-19].

Again, the Court asked Akers for any proof that Conor had acted as a lawyer in the case. Finally, counsel conceded he had none.

9

> I'll represent to the court I have nothing like that. Okay, I have no personal knowledge.

[Transcript, p. 8, lines 10-12].

Akers than asserted that Conor "has a financial interest" in the case because Hall Estill has a "bonus program" for associates.[4] However, after the Court asked for specific evidence that Conor had received a bonus based on the case at bar, Akers again admitted he had no such evidence.

> No . . . . Okay. There is nothing at any deposition, there is not somebody that said, oh, he's going to get a 10 percent bonus if we're successful – if they're successful, no, sir.

[Transcript, p. 9, lines 10, 18-21].

Counsel for CEP stated that Conor has not worked on this case, "has not done any research, has not been involved in any aspect of the case." [Transcript, p. 10, lines 2-5]. Counsel for CEP also stated that associates at Hall Estill do not receive bonuses based on the outcome of a case. [Transcript, p. 10, lines 10-17]. The Court asked Akers for any evidence to refute the statements made by counsel for CEP:

> THE COURT: Okay. Mr. Akers do you have anything to either contradict what's just been said or anything like that?
>
> MR. AKERS: No, Your Honor. Like I said, we didn't do any type of formal discovery on the –

[Transcript, p. 11, lines 8-12].

---

[4] HS's recusal motion did not allege financial interest under § 455(B)(5)(iii). This theory was espoused for the first time at the July 1 hearing.

HS has failed to meet its burden of proof and has conceded it had no basis for its § 455(b)(5)(ii) allegation.

## B. HS's Motion to Recuse Pursuant to Section 455(a)

The Court now addresses the broader question of recusal under section 455(a). The focus here is the appearance of impropriety. Again, HS has the burden of establishing facts that would cause a reasonable person, knowing all the relevant facts, to harbor doubts about the judge's impartiality. *Bryce*, 289 F.3d at 659 (*quoting Hinman*, 831 F.2d at 939)).

HS cites two facts. The first is not contested – that Conor is an associate with Hall Estill. HS also asserts that counsel for CEP had a legal duty to inform HS about Conor's employment once a motion for contempt was filed.

**(1) Conor's employment, by itself, is not sufficient grounds for recusal.**

Many courts have held that it is not grounds for recusal if a judge's relative is an associate with a law firm in a case before the judge, as long as he or she is not acting as a lawyer in the matter. For example, in *Cloverdale Equipment Co. v. Manitowoc Engineering Co.*, 964 F.Supp. 1152 (E.D.Mich. 1997), the law firm representing the Defendant employed the judge's son as an associate. The Court found that recusal was not required. *Id.* at 1155.

In *Faith Temple Church v. Town of Brighton*, 348 F.Supp.2d 18 (W.D.N.Y. 2004), the Court addressed a motion to recuse on the basis of the judge's son working as an associate for a law firm in the case at bar. The court noted:

> Courts have consistently held that a judge's kin does not have an "interest that could be substantially affected" when he or she is only an associate, as opposed to a partner, in a law firm representing a party to the action and does not actively participate in the proceeding.

*Id.* at 19 (*citing Cloverdale.*). *See also, U.S. ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456, 463-64 (5th Cir. 1977), *cert. denied*, 434 U.S. 1035 (1978).

In *In re Mercedes–Benz Antitrust Litigation*, 226 F.Supp.2d 552 (D.N.J. 2002), the Court explained that mere employment as an associate does not create an interest that would be substantially affected by the outcome of the case.:

> Employment of a judge's daughter or son by a law firm appearing before the Court is not so rare that the resulting conflict of interest issues are unfamiliar to the courts. As noted, the core question is whether a related person has an interest likely to be substantially affected by the outcome of the pending matter. It appears to be settled that employment as an associate usually will not involve such an interest; the courts reason that a salaried attorney's income will not depend on the fortunes of the firm.

*Id.* at 555. *See also*, Leslie W. Abramson, *The Judge's Relative is Affiliated with Counsel of Record: The Ethical Dilemma*, 32 Hofstra L.Rev. 1181, 1197-99 (2004) ("Case law generally shows a judicial reluctance to disqualify when the judge's lawyer-relative is merely affiliated with a law firm but is not a partner") (footnote omitted).

HS has cited no cases or other legal authority holding contrary to this general rule.

**(2) HS has failed to establish CEP's duty to disclose.**

HS argues that counsel for CEP had an affirmative duty to disclose Conor's employment situation once a contempt citation was sought; however, HS has provided no legal authority for this proposition. Apparently, it is HS's belief that parties must consent to a Magistrate Judge's jurisdiction in a contempt matter and that HS would not have consented had it known that Conor was an associate with Hall Estill. Akers stated at the July 1 hearing:

> That we should be given the opportunity to at least be told before we ever get to this particular point, before we ever get to – we're not just dealing with a routine motion to compel order compelling, we're dealing with a contempt citation as well so we have two different things going here.
>
> Based off of that inaction, going all the way back that I've already . . . **I think that should have been disclosed so that my client would have had an opportunity to make a decision of whether to allow to proceed on the contempt citation or not proceed on the contempt citation**, to proceed now on all of the issues. Because it has – on its face, if you discuss it with anybody, it has the potential, the effect of having some sort of impropriety.

[Transcript, p. 13, lines 3-19 (emphasis added)].

There are several flaws in this argument. HS has not been misled into consenting to the undersigned Magistrate Judge's jurisdiction, because consent is not required and HS has never filed any consent whatsoever:

> THE COURT: All right. So your position is that once this application for finding of contempt is filed that any proceedings related to that must be done with the consent of the parties.
>
> MR. AKERS: Correct.

>     THE COURT: Now, have you filled out a consent form? You know –
>
>     MR. AKERS: No, we haven't your honor.

[Transcript, p. 19, lines 13-20].

HS can hardly claim it has been misled into consenting to a judge's jurisdiction if it has never consented in the first place.

Even more fundamental, there is no consent requirement for contempt proceedings. HS has offered no authority whatsoever for this proposition; indeed, counsel has badly misread the applicable statute. The statute in question provides in pertinent part:

> <u>In any case in which a United States magistrate judge presides with the consent of the parties under subsection (c) of this section</u> . . . the magistrate judge shall have the power to punish, by fine or imprisonment, or both, criminal contempt constituting disobedience or resistance to the magistrate judge's lawful writ, process, order, rule, decree, or command.

28 U.S.C. § 636(e)(3) (emphasis added).

Subsection (c) of the statute provides for a Magistrate Judge's general jurisdiction over all proceedings in a case if the parties so consent. In cases – as here – where the parties have *not* consented to the Magistrate Judge's jurisdiction, a § 636(e)(6)(B) applies. That section provides:

> (B) in any other case or proceeding [*i.e.,* where the parties have not consented under subsection (c)] under subsection (a) or (b) of this section, or any other statute, where--
>
> (i) the act committed in the magistrate judge's presence may, in the opinion of the magistrate judge, constitute a serious criminal

> contempt punishable by penalties exceeding those set forth in paragraph (5) of this subsection,
>
> (ii) the act that constitutes a criminal contempt occurs outside the presence of the magistrate judge, or
>
> (iii) the act constitutes a civil contempt,
>
> the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

28 U.S.C. § 636(e)(6)(B).

Thus, the statute distinguishes between how a Magistrate Judge handles contempt matters in a consent case versus a non-consent case. However, the Court is unaware of any authority – certainly, HS has offered none – for the proposition that a Magistrate Judge cannot handle a contempt proceeding as described in § 636(e)(6)(B) unless the parties consent to his doing so. The statute does not say that and HS has offered no legal authority for this assertion.

Finally, HS has also failed to cite any legal authority for its proposition that, even aside from the contempt issue, CEP's counsel had a legal duty to disclose Conor's employment with Hall Estill. At the July 1 hearing, the Court specifically asked Akers for the legal authority supporting this proposition. His response was unavailing:

> I would encourage the court to read the notes that – the advisory notes that went with 455(a).

[Transcript, p. 16, lines 18-20].

The first problem here is that there are no "advisory notes" to this statute.[5] Again the Court asked where Akers' "understanding" that there was a duty to disclose came from, but again the response was not helpful:

> I wanted to say from the case law of reading with the standards that they had down on, I think, the cases that they – they even cited to us as well the opinions. But I cannot – and I'd be remiss, but it's either in some of the sectional notes in explaining the 455(a) and the other of how close do you get to the envelope type of scenario. This is one of them that comes up that – and that's why we cited 455(b)(5)(ii).

[Transcript, p. 15, lines 3-11].

Following the July 1 hearing, the Court gave HS another opportunity to provide legal authority for its argument. The Court directed Akers to provide it with the *specific* legal authority he was relying on in support of the duty to disclose. [Dkt. No. 119]. HS's response offered no specific authority:

> The Plaintiff did review some advisory articles, particularly "Judicial Disqualification: An Analysis of Federal Law (Second Addition [sic], Federal judicial Center, 2010) and the Model Code of Judicial Conduct, both of which dealt with the subject.

---

[5] Of course, merely encouraging the Court to "read the advisory notes" does not fulfill HS's obligations under the Federal Rules of Civil Procedure. Fed.R.Civ.P. 7(b) requires a movant to "state with particularity the grounds for seeking the order." The purpose of the rule is to provide the other side and the Court with notice of the grounds for the motion. *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1226 (10th Cir. 2006). HS has failed to state with particularity the basis for the duty to disclose.

[Dkt. No. 122, at 1]. This hardly meets the Court's request for the "**specific legal authority – case law or statute – that establishes this duty of disclosure.**" [Dkt. No. 119]. HS has offered not satisfied this directive. HS again tied the issue to "informed consent" – consent that the law does not require and which HS has never given anyway:

> Where the relationship was never disclosed in a timely fashion before discovery started and then (sic) is asked to consent to the qualification of the Magistrate to hear a citation for contempt, no possibility of informed consent exists. Defense counsel, having acknowledged that they were aware of this problem, did had (sic) a duty to disclose the situation to the Plaintiff when the Magistrate was assigned to the discovery issues.

[Dkt. No. 122, at 2].

Counsel has an obligation under the Federal Rules of Civil Procedure to "state with particularity the grounds for seeking the order." Fed.R.Civ.P. 7(b)(1)(B). Despite numerous opportunities, HS has failed to meet this burden.

Courts that have examined the situation presented here have found that recusal is not required under either section 455(b)(5)(ii) or 455(a). HS has provided no evidence whatsoever to support recusal under § 455(b)(5)(ii), and has provided no sufficient legal or factual basis for recusal under § 455(a). Accordingly, the Motion for Recusal is **DENIED**.

Any appeal or objection to this Opinion and Order must be filed by July 21, 2014.

**DATED** this 9th day of July 2014.

_____
Paul J. Cleary
United States Magistrate Judge