**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **H.S. FIELD SERVICES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 12-CV-531-GKF-PJC** |
| | ) | |
| **CEP MID-CONTINENT LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>OPINION AND ORDER</u>

This lawsuit's path to the courtroom is littered with on-going discovery fights, contempt motions, and sanctions requests.  During its three-and-a-half year history, the case has had six Scheduling Orders entered by three district judges.  Discovery closed in May 2014, and the case is presently set for trial in May 2016.  Now before the Court is Plaintiff's Opposed Motion for Leave to Take Preservation Depositions [Dkt. No. 259] in which Plaintiff H.S. Field Services, Inc. ("HS") seeks to take three "preservation depositions."  The proposed deponents are:  George N. Keeney, III ("Keeney"), Defendant CEP Mid-Continent LLC's ("CEP") expert witness; and Charles Ward ("Ward") and Larry Casey ("Casey"), witnesses under CEP's control who have already been deposed.  CEP opposes the motion.  A hearing was held on January 19, 2016.  For the reasons set forth below, the Motion to Take Preservation Depositions is **DENIED**.

## BACKGROUND

A short history of this matter is necessary to understand the present posture of the case.

When the case was filed in July 2012, it was randomly assigned to District Judge Claire V. Eagan.  In November 2012, a Scheduling Order was entered calling for discovery to be concluded by March 29, 2013.  [Dkt. No. 21]. In January 2013, the case was reassigned to District Judge John E. Dowdell [Dkt. No. 24], and an Amended Scheduling Order was entered.  [Dkt. No. 29]. Pursuant to this schedule, expert reports were due in August and September, and all discovery was to be completed by October 4, 2013.  Discovery disputes quickly derailed this schedule.  Thus, in September 2013, a Second Amended Scheduling Order was entered. [Dkt. No. 49].  Under this Order, discovery was to be completed by January 21, 2014.  Expert deadlines were not changed – a fact that Defendant quickly sought to correct in a motion to Extend Certain Deadlines.  [Dkt. No. 54].  At that time (January 27, 2014), Defendant noted that although both parties had identified their proposed experts, neither side had provided an expert report.  [*Id.*, at 6].  On February 25, 2014, the Court granted Defendant's motion and extended the time for Plaintiff's expert report to April 25, 2014, and Defendant's expert report ("the Keeney Report") to May 9, 2014.  Expert discovery was to close on May 30, 2014.  [Dkt. No. 69].

Subsequently, because of continuing discovery problems, CEP was given until May 30, 2014, to submit its expert report [Dkt. No. 89], and in July 2014

CEP was permitted to supplement the Keeney Report because of problems CEP encountered getting documents from HS.  [Dkt. Nos. 117 & 135].

CEP also sought leave to amend its Answer and Counterclaims [Dkt. No. 111], and the request was granted.  [Dkt. No. 190].  Accordingly, on February 2, 2015, CEP filed its Second Amended Answer to First Amended Complaint and Second Amended Counterclaims ("SAA").  [Dkt. No. 195].  The SAA added fraud as an affirmative defense, and added a counterclaim for fraud set forth in 22 pages of new allegations.  [*Id.*, at 16-38].

In April 2015, the case again changed judicial hands, passing from Judge Dowdell to Chief Judge Gregory K. Frizzell.  [Dkt. No. 205].  A new Scheduling Order was entered on July 9, 2015.  [Dkt. No. 216].  According to that Order, all discovery and expert report deadlines had passed.  An Amended Scheduling Order was entered on July 30, 2015, reflecting changes in certain pretrial and trial dates, while again recognizing that all discovery deadlines were closed.  [Dkt. No. 225].  A revised Pretrial Order is now due April 26, 2016, and trial is set for May 23, 2016.  [Dkt. No. 253].

## DISCUSSION

### 1. The Trial/Discovery Deposition Distinction.

HS seeks to reopen discovery in order to take "preservation" or "trial" depositions of three witnesses.  HS argues that such depositions are different from "discovery depositions" and, therefore, not bound by the Court's discovery deadlines.  The Court disagrees.  While some courts have recognized a difference between trial depositions and discovery depositions, this court is not

one of them.    In *Crawford v. U.S.*, 2013 WL 249360 (N.D.Okla. Jan. 23, 2013), this Court stated:

> Depositions are a discovery device governed by Rules 26–32 of the Federal Rules of Civil Procedure. Although, primarily a discovery tool, deposition may also serve to preserve testimony when a witness may be unavailable for trial. *Eg.*, Fed.R.Civ.P. 32(a)(4). However, the Federal Rules of Civil Procedure do not distinguish between "discovery depositions" and "trial depositions." *Henkel v. XIM Products, Inc.*, 133 F.R.D. 556, 557 (D.Minn.1991); *Integra Lifesciences I, Ltd. V. Merck KGaA*, 190 F.R.D. 556, 559 (S.D.Cal.1999).  Thus, it is expected that, absent extraordinary circumstances, all necessary depositions will be concluded before discovery cutoff. Then, if a witness is unavailable for trial, the deposition may be used in the place of live testimony.

*Id.* at *2.  *See also*, *Loda Okla, LLC v. Overall*, 2015 WL 1467825, n. 5 (N.D.Okla. March 30, 2015) (noting that Fed. R. Civ. P. 32 draws no distinction between trial and discovery depositions).

In support of its position, HS relies on cases from other jurisdictions, but HS ignores the clear authority in *this* Court.  Thus, unless HS can establish "extraordinary circumstances," it was required to complete its depositions by the May 2014 deadline set by the Court.  [Dkt. No. 69].

### 2.  Are There Extraordinary Circumstances Present?

The Court may grant HS relief from compliance with the Scheduling Orders if HS identifies extraordinary circumstances warranting such relief. The Court is aware that in dealing with a request to modify a pretrial order, "total inflexibility is undesirable." *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997); *Hull v. Chevron U.S.A., Inc.*, 812 F.2d 584, 588 (10th Cir. 1987) (*citing* Fed. R. Civ. P. 16 advisory committee note).  Fed. R. Civ. P. 16

4

states that schedules should be modified only upon a showing of good cause and by leave of court.  Fed. R. Civ. P. 16(b)(4).  HS has identified no extraordinary circumstances that would justify allowing these depositions 20 months after the discovery deadline.  For example, the Court is not persuaded that HS has a legitimate interest in preserving the testimony of CEP's expert witness.  In its motion, HS stated that it is "crucial" that Keeney's testimony be preserved and that HS "be allowed an opportunity to examine him."  [Dkt. No. 259, at 5].  The Court finds no legal or logical basis for HS to preserve the expert testimony of its adversary's expert witness.  The real motivation here seems to be the "opportunity to examine" Keeney – an opportunity that was available to HS long ago and which HS failed to seize.  HS's belated desire to depose CEP's expert is not a proper basis for allowing this deposition.

Nor has HS offered extraordinary circumstances to re-depose witnesses Casey and Ward.  The prior depositions are available for HS's use at trial "for any purpose" allowed by the Federal Rules.  Fed. R. Civ. P. 32(a)(2)&(4).

### 3.  Is There Good Cause to Reopen Discovery?

HS's motion is more properly considered a motion for relief from the Court's Scheduling Order in order to reopen discovery.

The Federal Rules of Civil Procedure provide that "A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  As the Court noted above, in dealing with a request to modify a pretrial order,  "total inflexibility is undesirable."  *Summers* at 604; *Hull*, 812 F.2d at 588 (*citing* Fed. R. Civ. P. 16 advisory committee note).  However, the

Court is also aware that life is fleeting and that all good things – even discovery – must sometime come to an end.  As the court noted in *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320 (N.D. Ill. 2005):

> Complex cases such as this one must have enforceable discovery deadlines. *Harris v. Owens–Corning Fiberglas Corp.*, 102 F.3d 1429, 1433 (7th Cir.1996). The practical and institutional reasons for the need for finality are all too apparent. First, there is the inevitable shortness of life. Beyond that, "[t]ime limits coordinate and expedite a complex process; they pervade the legal system, starting with the statute of limitations." *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir.1994). Without them there would be no end to litigation.

*Id.* at 328.

Thus, Fed. R. Civ. P. 16 recognizes that pre-trial scheduling orders may require modification; however, the Rule provides that any such modification must be by leave of court, and then, only upon a showing of good cause.  Rule 16(b)(4).  The Tenth Circuit and other courts have identified a number of relevant factors for a court's consideration in determining whether there is good cause to reopen discovery:

- Whether trial is imminent;
- Whether the request is opposed;
- Whether the non-moving party will be prejudiced;
- Whether the moving party was diligent in obtaining discovery within the time frame established by the court;
- Whether the need for additional discovery was foreseeable in light of the time allowed for discovery by the district court; and,
- Whether the proposed discovery is likely to lead to relevant evidence.

*Smith v. U.S.*, 834 F.2d 166, 169 (10th Cir. 1987) (*citing Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1213 (3rd Cir.1984); *Wilk v. Am. Medical*

*Assoc.*, 719 F.2d 207, 232 (7th Cir.1983), *cert. denied,* 467 U.S. 1210 (1984);

*Geremia v. First Nat'l Bank of Boston*, 653 F.2d 1, 5-6 (1st Cir.1981)).

While these six factors, and others, may be helpful to a court, the key

consideration is whether the party seeking to reopen discovery or otherwise

amend the Court's schedule has been diligent in trying to meet the existing

deadlines.

> Without attempting a rigid or all-encompassing definition of "good
> cause," it would appear to require at least as much as would be
> required to show excusable neglect, as to which simple
> inadvertence or mistake of counsel or ignorance of the rules
> usually does not suffice, and some showing of "good faith on the
> part of the party seeking the enlargement and some reasonable
> basis for noncompliance within the time specified" is normally
> required. The district court is clearly not compelled to accept a
> lesser "excusable neglect" showing.

*Broitman v. Kirkland*, 86 F.3d 172, 175 (10th Cir. 1996) (*quoting Winters v.*

*Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir.1985)) (citation

omitted); *Putnam v. Morris*, 833 F.2d 903, 905 (10th Cir.1987). " '[G]ood cause'

requires a greater showing than 'excusable neglect.' " *Broitman*, 86 F.3d at 175.

> The "good cause" standard primarily considers the diligence of the
> party ... The party seeking an extension must show that despite
> due diligence it could not have reasonably met the scheduled
> deadlines. [C]arelessness is not compatible with a finding of
> diligence and offers no reason for a grant of relief. The lack of
> prejudice to the nonmovant does not show "good cause."

*Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995)

(citations omitted).

> Properly construed, 'good cause' means that scheduling deadlines
> cannot be met despite a party's diligent efforts.  In other words,
> this court may 'modify the schedule on a showing of good cause if

7

[the deadline] cannot be met despite the diligence of the party
seeking the extension.

*Armstrong v. Gemini Motor Transport, LP*, 2013 WL 4483438, *1 (W.D. Okla.

Aug. 20, 2013) (*quoting Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684,

687-88 (D. Colo. 2000); *Mann v. Fernandez*, 615 F.Supp.2d 1277, 1285 (D.N.M.

2009); *Street v. Curry Bd. Of County Comm'rs.*, 2008 WL 2397671, *6 (D.N.M.

Jan. 30, 2008).

None of the factors this Court may consider in weighing a modification of

the existing schedule supports HS's request.  This is especially true of the

diligence requirement.  HS made no effort to depose Keeney in timely fashion

and for nearly two years, has made no effort to secure leave of court to take his

deposition out of time.  HS complains that it could not have pressed for

Keeney's deposition because it was preoccupied with sanctions and contempt

motions and a *Daubert* challenge that lingered for nearly a year.  The Court is

not persuaded by this.  There was ample opportunity for HS to have sought

relief from the Court's Scheduling Order well before now.

HS also contends that the trial judge only recently informed the parties

that they would not have three weeks to try this case, only seven days.  HS

contends that this temporal limitation requires that certain information

regarding challenged invoices be clarified before trial.[1]  Again, the Court is not

persuaded.  This case has long been represented as requiring no more than 7-9

trial days.  That was the estimate in the parties' initial Joint Status Report.

---

[1]      At the January 19 hearing, the Court directed the parties to expedite
their work in reaching stipulations on invoice issues, and set a schedule for
that to begin.

8

[Dkt. No. 20, ¶ XIII].  Furthermore, the 7-9 day trial estimate was expressly set forth in the Court's Scheduling Orders.  [Dkt. No. 21, ¶ 21; Dkt. No. 29, ¶ 23; Dkt. No. 49, ¶ 23; Dkt. No. 69, ¶ 24].  Thus, the idea that only seven days would be available for trial cannot be said to be a shocking revelation.

As to the proposed depositions of Casey and Ward, HS has already deposed these witnesses.  According to counsel for HS, Casey was deposed in January or February of 2014 and Ward in April 2014.  CEP indicated at the hearing on this motion that it intends to bring both men to testify at trial, but if, for some reason, either or both become unavailable, HS already has their depositions.

HS has not been diligent in pursuing Keeney's deposition and has not shown good cause to reopen discovery at this time.  **ACCORDINGLY**, HS's Motion to Take Preservation Depositions [Dkt. No. 259] is **DENIED**.

At the January 19 hearing, HS also requested that discovery be opened in order that it could take depositions in preparation of an evidentiary hearing on CEP's Second Motion for Sanctions. [Dkt. No. 246].  CEP identified the witnesses it will call at that hearing, and all have already been deposed by HS. HS provided no reasonable legal or factual basis to permit deposition discovery in advance of this hearing.  That request is also denied.

An evidentiary hearing on CEP's Second Motion for Sanctions will be held March 22-23, 2016, beginning at 9:30 a.m.  By March 11, 2016, the parties are to submit an agreed pre-hearing memorandum, in the form of a Pre-Trial Order, indicating the witnesses and exhibits the parties intend to use.  The

parties should also indicate whether they believe an advisory jury would be helpful in determining the issues.

**IT IS SO ORDERED** this 22nd day of January 2016.

Paul J. Cleary
United States Magistrate Judge